*519 OPINION OF THE COURT
Barbara R. Kapnick, J.
In this action, plaintiffs seek the return of a $230,000 contract deposit placed in connection with the sale of a cooperative apartment.
On May 11, 2005, Glen Altman (Mrs. Altman) executed a contract to purchase a cooperative apartment in a building located at 1150 Park Avenue in Manhattan for the sum of $2,300,000 from defendants Kenneth F. Kaplan and Diane K. Kaplan (the Kaplans). Pursuant to the contract, Mrs. Altman deposited 10% of the purchase price ($230,000) with defendant Rosenbluth & Rosenbluth, who were the sellers’ attorneys. The parties agreed that this would be an all cash transaction and that the balance of the purchase price was due at the closing, which was scheduled in the contract of sale for September 15, 2005.
Pursuant to paragraph 6.1 of the contract, the sale was subject to the approval of the cooperative corporation through its board of directors. In order to obtain that approval, Mrs. Altman filled out an application and submitted personal and financial references and financial information, including a personal financial statement, bank statements and tax returns, to the board on or about July 27, 2005. She also appeared before the board for a personal interview on August 11, 2005.
The Kaplans contend that on August 18, 2005, the cooperative corporation approved the transfer and assignment of the shares and proprietary lease to Mrs. Altman in writing and issued its consent. Defendants further allege that “[u]pan information and belief, by on or about August 22, 2005, Mrs. Altman had been advised that the Corporation had consented to the transfer of the Unit.” Plaintiffs dispute that Mrs. Altman was ever notified of the approval before September 1, 2005, when she passed away, unexpectedly.
Thereafter, Tracy Altman Warner, Altman’s daughter, and Alan G. Kraut were appointed coexecutors of Altman’s estate (the plaintiffs). The plaintiffs refused to close title under the contract and, on September 28, 2005, they sent a letter to Rosenbluth & Rosenbluth demanding the return of the contract deposit “with interest as provided for under paragraph ‘1.18’ and ‘28’ of said contract.” The Kaplans refused to return the deposit and by letter dated October 6, 2005 instructed Mr. Rosenbluth not to release the escrowed funds.
*520 The plaintiffs then commenced this lawsuit on or about February 28, 2006 claiming that the contract was void because Mrs. Altman had not received the required approval from the cooperative’s board of directors prior to her death, “nor was approval of the sale pursuant to the Contract issued by the Corporation and/or the Managing Agent” subsequent to her death.
Defendants previously moved for summary judgment dismissing the complaint on the grounds that: (1) the cooperative’s board of directors consented to the sale on August 18, 2005 and Laurel Rosenbluth, one of the real estate brokers involved in the sale, stated in her affidavit that she promptly advised Mrs. Altman and Mrs. Altman’s real estate broker’s assistant that the board had approved the sale, and (2) paragraph 15.2 of the contract makes the contract binding on Mrs. Altman’s heirs and legal representatives.[1]
The Kaplans argued that plaintiffs’ refusal to close constituted a default by the purchaser and that, pursuant to paragraph 13.1 of the contract, they exercised their remedy in the event of the buyer’s default by terminating the contract and retaining the $230,000 contract deposit as liquidated damages.[2]
In opposition, plaintiffs argued: (1) on information and belief, that the cooperative’s policies and procedures would not have permitted the Kaplans to sell the apartment to Mrs. Altman’s estate and, therefore, Mrs. Altman’s death excused performance of the contract; (2) that the consent of the corporation’s board of directors was not communicated to Mrs. Altman during her lifetime; and (3) that the motion was premature because defendants had not responded to plaintiffs’ discovery requests and that plaintiffs had not had an opportunity to examine certain nonparty witnesses.
The essence of the dispute in this case revolves around the construction of two sections of the contract. First, there is paragraph 4.2 which provides that “Purchaser represents and covenants that Purchaser is acquiring the Shares and Lease solely for residential occupancy of the Unit by the Proposed Oc *521 cupants only and will so represent to the Corporation in connection with Purchaser’s application to the Corporation for approval of this transaction by the Corporation.” Then there is paragraph 15.2 quoted in footnote 1.
Plaintiffs also referred to a letter dated November 17, 2005 from defendant Kenneth F. Kaplan to Gumley-Haft, the managing agent of the cooperative corporation, which plaintiffs apparently received from the corporation in response to a subpoena duces tecum served upon it by counsel for the Kaplans.
The letter states, in relevant part, that
“as you are aware, our apartment was to be sold in September, but due to unfortunate circumstances of the death of the buyer, the closing did not take place. The Estate of the deceased buyer has not chosen to go forward and has tied everything up. Regretfully, the board did not take the affirmative position of indicating that it would honor the contract and let the Estate purchase the apartment, but rather chose what I thought was a ‘neutral’ position by not taking a position.”
By decision/order dated March 28, 2007, this court found that there were questions of fact as to whether or not the corporation would have permitted the plaintiffs to close on the apartment, even if they had been ready and willing to do so, which precluded the granting of summary judgment at that time.
Moreover, this court found that plaintiffs, as strangers to the contract, should have an opportunity to conduct discovery of both the parties and the nonparty witnesses involved in the transaction before the court determined whether the Kaplans were entitled to judgment as a matter of law.
Accordingly, this court denied defendants’ motion for summary judgment as premature, with leave to renew, if deemed appropriate, once discovery was completed.
Now that discovery is completed and the action is on the trial calendar, defendants renew their motion for an order pursuant to CPLR 3212 granting summary judgment dismissing plaintiffs’ complaint, awarding them costs and disbursements, and scheduling a hearing to determine defendants’ reasonable attorneys’ fees pursuant to paragraph 13.3 of the contract.
It is well settled that
“[t]o obtain a summary judgment it is necessary that the movant establish his cause of action or defense ‘sufficiently to warrant the court as a mat *522 ter of law in directing judgment’ in his favor (CPLR 3212, subd [b]), and he must do so by tender of evidentiary proof in admissible form. On the other hand, to defeat a motion for summary judgment the opposing party must ‘show facts sufficient to require a trial of any issue of fact’ (CPLR 3212, subd [b]) . . . [M]ere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient” (Zuckerman v City of New York, 49 NY2d 557, 562 [1980] [citations omitted]; see also, Gilbert Frank Corp. v Federal Ins. Co., 70 NY2d 966 [1988]).
Defendants point to the testimony of Dr. Herbert N. Appel, the president of the cooperative corporation, that there were no “policies and procedures” which would have precluded Mrs. Altman’s estate from closing on the apartment, although he did not recall an estate ever having purchased an apartment in the building before this. He further testified that had plaintiffs applied for consent to a transfer of the unit to the estate, the application would have been considered by the board.
There is no dispute, however, that plaintiffs never filed such an application.[3]
Defendants also argue that contrary to plaintiffs’ reliance on paragraph 4.2, the contract of sale does not state that only Glen Altman would be residing in the apartment since the identification of the “Proposed Occupants” in paragraph 1.17 was left blank. However, Mrs. Altman’s attorney, Robert W. Resnick, Esq., states in his affirmation submitted as part of plaintiffs’ papers in opposition that the contract of sale contemplated occupancy by Mrs. Altman only.
Defendants further contend that reading paragraph 6.2 (which deals with the purchaser’s obligation to submit an application for approval of the sale), along with paragraphs 15.2 and R-25 (“This contract is contingent upon the approval of the board of directors of the Cooperative Corporation of the transaction as set forth herein”), it is clear that plaintiffs were required to apply for the corporation’s consent to the “transaction,” i.e., the sale to them as purchasers under the contract. Any other interpretation, defendants claim, would render paragraph 15.2 meaningless and superfluous and would allow plaintiffs to simply abandon the contract contrary to paragraph 15.2.
*523 In addition, defendants have submitted an affidavit from Laurel Rosenbluth, who represents that she was advised by James Stasio, the director of cooperative closings for GumleyHaft, that Mrs. Altman was approved by the board of directors for the building on August 16, 2005. Ms. Rosenbluth claims (as she did in the affidavit submitted in support of the prior motion) that she thereafter promptly advised Mrs. Altman, and an assistant for Mrs. Altman’s broker, Mr. Kaiser, who was out of the country, that Mrs. Altman was approved by the board.
Ms. Rosenbluth further claims, as she did previously, that
“[a]t that time, [Altman] asked me to make an appointment for her to return to the apartment so that she could look at some of the Kaplans’ personal property to determine what, if any, she wanted to purchase. On August 22, 2005, I went to the apartment with Mrs. Altman and her stepdaughter Pat Falkenberg.”
Defendants have also submitted an affidavit from Ms. Rosenbluth’s husband, Lawrence Rosenbluth, Esq., who was counsel to the Kaplans and prepared the initial contract of sale.
Mr. Rosenbluth states specifically that
“[o]n August 16, 2005, my wife advised me that the board had approved the sale to Ms. Altman. I thereafter spoke with Robert Resnick, Esq., Ms. Altman’s attorney[,] on that day to fix a date for closing. Mr. Resnick and I discussed and established a closing date of September 15 or 16, 2005.”
However, Mr. Resnick states in his affirmation that Mr. Rosenbluth “did not, at any time prior to Purchaser’s death, advise your affiant, either orally or in writing, that the application of Glen Altman had been approved.”
Mr. Rosenbluth further represents as follows:
“To the best of my knowledge, at no time did anyone on behalf of the estate ever make any application to the cooperative corporation for a transfer of the Kaplan’s [sic] apartment to the estate. Instead, consistent with the conversations I had with Mr. Resnick in early September right after Ms. Altman’s death, and again in early October 2005, the estate refused to close title and refused to comply with their obligations under the contract, contrary to the express provisions stating that the contract is binding upon the parties’ heirs, representatives and as *524 signs.”
Defendants contend that plaintiffs’ repudiation of the agreement without giving the corporation a formal opportunity to grant or deny their request for approval of the transfer of the apartment to the estate constituted a breach of the contract, entitling the sellers to retain the contract deposit as liquidated damages.
Plaintiffs deny that they had any obligation after Mrs. Altman’s death to proceed under the contract since it specifically contemplated occupancy by Mrs. Altman only. Moreover, Mr. Resnick states in his affirmation that prior to sending his letter dated September 28, 2005 demanding that Mr. Rosenbluth return the deposit, he
“was advised by Phyllis Weinberg, Esq. of Kurzman, Karelsen & Frank, LLP ... as counsel for the Apartment Corporation, 1150 Park Avenue Tenants, Inc., that, based upon her experiences, the Apartment Corporation would not consent to the issuance of its capital stock and/or proprietary lease to the Estate of Glen Altman or to any other person and/or entity except as named in the Contract of Sale.”
Plaintiffs further contend that defendants still have not established that Mrs. Altman was notified prior to her death that she had been approved by the board. Even Dr. Appel did not know whether or not any person acting on behalf of the board notified Mrs. Altman. Further, plaintiffs argue that Ms. Rosenbluth’s representation that she communicated a hearsay statement to Mrs. Altman that she had been approved is self-serving and should be rejected.
Defendants argue in reply that plaintiffs have not uncovered any evidence to contradict Ms. Rosenbluth’s claim that she notified Mrs. Altman that she had been approved. Moreover, they deny that it is hearsay since it is offered to show that Mrs. Altman was notified, not that it is true that she was actually approved.
Of course, Ms. Rosenbluth specifically stated in her affidavit that “[o]n August 22, 2005, [she] went to the apartment with Mrs. Altman and her stepdaughter Pat Falkenberg. “It appears to this court that in all this time plaintiffs could have arranged to get an affidavit from Ms. Falkenberg as to whether she recalled visiting the apartment on August 22, 2005 with Mrs. Altman and Ms. Rosenbluth to look at some of the Kaplans’ personal property for possible purchase. It also appears that *525 someone could have managed to obtain an affidavit from Mr. Kaiser’s assistant who allegedly was also advised that Mrs. Altman was approved by the board.
Yet, there are no affidavits from either of these individuals. Thus, plaintiffs have not shown facts sufficient to require a trial on this issue.
When this court denied defendants’ previous motion for summary judgment on March 28, 2007, it was based on the finding of this court that there were “questions of fact as to whether or not the Corporation would have permitted the plaintiffs to close on the apartment, even if they had been ready and willing to do so.” The court also determined that plaintiffs, as strangers to the contract, should have an opportunity to conduct some discovery, which has now been done.
Paragraph 15.2 of the contract clearly states that it “shall bind and inure to the benefit of the Parties hereto and their respective heirs, personal and legal representatives and successors in interest.” Plaintiffs here are coexecutors of the estate and Ms. Warner is also an heir. Their contractual obligation after Mrs. Altman’s death was to formally apply for consent to a transfer of the unit to the estate, which was admittedly never done, although several people weighed in on their opinions as to what the outcome would have been. The testimony seems to support the fact that there were no policies or procedures in place which would have definitively dictated one outcome or the other.
If plaintiffs had been rejected by the board, defendants would have had to return the down payment to the plaintiffs and the contract would have been terminated.
However, the board could have approved the transfer, obviously well aware that the apartment would not be occupied by Mrs. Altman. The unit could have remained vacant until the estate was able to resell it, or it could have been occupied by another heir or relative if approved by the board. Although the original plan was obviously that Mrs. Altman was to occupy the apartment with her two dogs, the board could have approved another arrangement under the circumstances.
However, the board was never given a chance to make a determination and the parties now can only speculate as to what that decision would have been.
Since plaintiffs did not pursue their remedy pursuant to the contract, they must be deemed to have breached the contract. *526 Accordingly, defendants’ motion for summary judgment is granted and plaintiffs’ complaint is dismissed with prejudice and with costs and disbursements to be taxed by the clerk upon the submission of a bill of costs. Mr. Rosenbluth, as escrow agent, may now disburse the contract deposit to the Kaplan defendants.
That portion of defendants’ motion seeking reasonable legal fees pursuant to paragraphs 13.3 and R-7 of the contract of sale is severed and that issue is referred to a referee to hear and report with recommendations (or hear and determine on stipulation of the parties).
Defendants’ counsel is directed to serve a copy of this order with notice of entry upon the Special Referee Clerk, who shall place this matter on the part 50R calendar for referral to a special referee.

. Paragraph 15.2 of the contract states that “[t]his contract shall bind and inure to the benefit of the Parties hereto and their respective heirs, personal and legal representatives and successors in interest.”

. Paragraph 13.1 of the contract provides, in pertinent part: “In the event of a default or misrepresentation by Purchaser, Seller’s sole remedy shall be to terminate this Contract and retain the Contract Deposit as liquidated damages.”

. Defendant Kenneth F. Kaplan testified that he was told that the board discussed the matter at a meeting, but took no action, as reflected in the November 17, 2005 letter.